## PORTIS v. MERRILL.

CONTRACTS : *Written, can not be varied by parol.*

 Where a note promises to pay interest at five per cent per month after maturity, the interest can not be avoided by a plea in equity that it was an agreed penalty to stimulate prompt payment at maturity.

APPEAL from *Jefferson* Circuit Court.

Hon. JOHN A. WILLIAMS, Circuit Judge.

*Carlton & McCain,* for appellant.

———— *Compton,* for appellee.

ENGLISH, C. J. :

Joseph Merrill sued James M. Portis, in the Circuit Court of Jefferson county, on the following note :

" $475.79.   On or before the 28th day of November next, value received, I promise to pay to the order of J. Merrill four hundred and seventy-five 79-100 dollars, with five per cent interest per month from due until paid.   Witness my hand and seal, this 28th day of June, 1874.

J. M. PORTIS.

The defendant filed the following answer to the complaint :

" Comes the defendant and files this, his equitable answer to the complaint herein, and says :  That he admits that he executed the note as set out in the complaint, but he says that said note was executed under the circumstances and for the consideration following—that is to say :  On the 28th day of June, 1874, the plaintiff held against the defendant a certain promissory note given by defendant to one James S. Evans, dated the — day of ————, 187–, for the sum of $500, bearing 10 per cent interest per annum, and which interest was afterwards increased to 2 1-2 per cent per month, which note had been indorsed by said Evans to the plaintiff herein, before said

Portis vs. Merrill.

28th day of June, 1874, and on which note was due, at the date last aforesaid, the sum of $422.93, as accumulated interest, and by way of payment of such accumulated interest, and in order to compound the same, the plaintiff agreed with the defendant, to accept the defendant's note for such accumulated interest, payable at the end of five months, to wit: on the 28th day of November, 1874, with the understanding and agreement that interest at the rate of 2 1-2 per cent. per month should be calculated on said sum of $422.93, accumulated interest as aforesaid, and that the said interest, so calculated, should be inserted in said note as principal, and in pursuance of such agreement, interest at the rate of 2 1-2 per cent. per month was calculated on said sum of $422.93 from the said 28th day of June, the date of said note, until said 28th day of November, 1874, the date of the maturity of said note, such interest, so calculated, amounting to the sum of $52.86; and the defendant thereupon, for the consideration aforesaid, and for no other or different consideration, executed to plaintiff the note in suit, and as a penalty to secure the payment of said sum of $422.93, and the said sum of $52.86 interest, so included in said note as aforesaid, it was stipulated in said note that the said note should bear interest, after maturity, at the rate of five per cent. per month. This defendant is willing to pay, and here tenders to pay the said sum of $475.79, with six per cent. interest thereon from the maturity of said note, and all costs of this suit; and defendant makes this equitable answer a counterclaim against the plaintiff, and asks to be relieved from the payment of said penalty stipulated in said note at five per cent. interest per month, as unconscionable and contrary to equity, and for other relief."

The court sustained a demurrer to the answer, and defendant saying nothing further in bar of plaintiff's demand, judgment was rendered against him for $475.79 debt, and $285.75

damages, being interest on the note from maturity to date of judgment (December 18, 1876), and the judgment was made to bear six per cent. interest.

Defendant appealed.

The answer of appellant to the complaint is not in the nature of a plea of want of or failure of consideration of the note sued on, for it shows neither. Nor can it be sustained as a plea of usury, for at the date of the note the Constitution of 1868 was in force, which allowed the parties to contract for any rate of interest they pleased, and the plea of usury was not allowed.

The note, on its face, is plainly a contract for interest at five per cent. per month from its maturity, and the appellant could not set up a cotemporaneous verbal agreement that it was to be a penalty, and thereby vary the plain terms of the written contract.

It was a hard bargain, and the creditor may have been over-exacting, but appellant must abide by the face of his written contract, as we held in *Miller* v. *Kempner*, 32 Ark., 573. We can not make new contracts for parties, or alter their plain meaning by construction.

If it be said that the five per cent. interest, after maturity, stipulated for in the face of the note, must be treated as a penalty intended to stimulate the maker to pay the note promptly at maturity, how could it have any such effect if the law be that he can only be required to pay the legal rate of interest after maturity as damages for breach of the contract? On the contrary, if the maker is legally obliged to pay the rate of interest stipulated for in the face of the contract, he would be stimulated to pay the note at maturity, and stop the running of such interest.

A sane man has no claim upon a court of law or equity to relieve him from a hard bargain, when it is voluntarily entered into, and no fraud is practiced upon him. We have heretofore

examined this subject fully, and we are not disposed to retrace our steps or reverse our conclusions.

Affirmed.

### DISSENTING OPINION.

EAKIN, J. :

This is a case of direct application, by cross-bill, to a court of equity for relief against a penalty. The note in suit was given for accumulated interest on a debt at the rate of 2 1-2 per cent. a month, calculated up to the maturity, and included in the sum total, and with interest upon the whole, after maturity, at the rate of five per cent. per month. There was no law, at that time, forbidding such a contract, and a court of law would have no option but to enforce it, nor should a court of equity refuse to do so at the suit of the creditor, unless the equitable defense should be properly made, and in apt time. Under the Constitution of 1868, parties might lawfully agree upon any amount or rate per cent. of interest, unless so exorbitant or oppressive as to give rise to the presumption of oppression, or undue influence, or fraud. Equity then interposes upon grounds independent of statute or constitutional provisions as to the permissible rate per cent. in fair transactions. It is, moreover, the settled policy of courts of equity to relieve against penalties invoked upon themselves by parties to a contract ; and further, to discourage, and except in peculiar cases, refuse to enforce executory contracts for compounding interest in future. These principles are all based on the broad ground of duty on the part of the chancery courts to protect needy persons from such improvident contracts as should not be exacted of them by others whose situation naturally gives them an undue influence.

Within a few years all usury laws in England have been repealed, and the state of the law in this respect is now, there,

as it was here under our Constitution of 1868.   The courts of
chancery here have nevertheless held that they were not pre-
vented from setting aside extravagant and improvident bargains
with regard to interest (see cases cited in 2d edition of Bisp-
ham's Eq. Ju., sec. 222); nor has the right to contract for in--
terest any bearing on the question of penalties.

What is a penalty, and what a contract for the use or for--
bearance of money, depends upon intention, to be deduced
from the terms of the contract and the circumstances of the
case.   In this case the cross-complaint alleges that the agree-
ment to pay five per cent. per month on the whole accumulated
interest at 2 1-2 per cent. a month was, in truth, a penalty, and
so intended.   Indeed it would seem so in the light of the pres--
ent Constitution, which has since fixed ten per cent. per annum
as the highest permissible rate.   It certainly was, in any view,.
a contract *in futuro* for compounding interest.

I think, in all cases, agreements for increased interest after·
maturity, or for exorbitant interest then to commence, es-
pecially when there is no reciprocal obligation on the part of
the creditor to allow the debtor the use of the money at the·
increased rate for a definite time, are penalties in their very
nature and essence, at least *prima facie*.   They bear indubita--
ble marks of intention to secure prompt payment to avoid.
worse consequences.   The debtor never calculates upon really
paying them.   He is too apt to be sanguine with regard to his
resources and the chances of business, hopes to pay at matu--
rity, and often is not in the mental condition to make cool cal--
culations.   He improvidently puts himself into a situation
where disappointment as to his means is attended with the most
shocking annoyances.   This is more apt to occur where there·
is no legal restriction upon conventional interest, and courts of·
equity, in such cases, should rather increase their vigilance than
renounce their powers.

I think, in this case, the offer to pay the full amount of the note, with legal interest after maturity, was quite enough, and relief should have been granted. I think these views may be reconciled with the decisions in *Badgett* v. *Jordan*, 32 Ark., 154, and *Miller* v. *Kempner*, *Ib.*, 573. The first was strictly a case at law, in which it was contended that a judgment for the excessive interest was erroneous. Courts of law have, of course, no power to administer equitable relief. The last was a case in equity by Kempner to foreclose a mortgage given to secure a note made to bear interest at the rate of ten per cent. per annum until maturity, and two per cent. per month afterwards till paid. After due service a decree was rendered upon default to appear and answer. Afterwards he moved to set the decree aside, which was refused. This court sustains the action of the court below upon the ground that the motion was addressed to the sound discretion of the court, and there was nothing to show that the court abused its discretion.

With these views I cannot assent to the opinion of the majority.